UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BLAKE L. ALLEN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:06-cv-610-LJM-WTL |
| | ) | |
| MICHAEL J. ASTRUE | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

### ENTRY ON JUDICIAL REVIEW

Plaintiff, Blake L. Allen ("Allen"), requests review of the final decision of Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying Allen's application for supplemental security income under Title XVI of the Social Security Act (the "Act"). The Court rules as follows:

### I. BACKGROUND

Allen was born on May 5, 1959. R. at 177. He was forty-two at the alleged disability onset date, July 24, 2001, and forty-six years old at the time of the Administrative Law Judge's (the "ALJ") decision. R. at 27. Allen has a high school special education with past relevant work experience as an upholstery helper, a laborer, and a dishwasher. R. at 120, 133, 183. Since the alleged onset date, Allen has not performed substantial gainful activity. R. at 428.

On September 24, 2001, Allen filed an application for supplemental security income under Title XVI of the Act. R. at 27. Allen claims he is "disabled" within the meaning of the Act under 42 U.S.C. §423 due to a combination of impairments consisting of degenerative joint disease, degenerative disc disease, gout, obstructive sleep apnea, hypertension, obesity and borderline intellectual functioning. R. at 28. Following administrative denials from the Social Security

Administration ("SSA"), Allen requested a hearing by an ALJ. R. at 27. ALJ James R. Norris presided over the requested hearing on October 9, 2003. R. at 27, 88. A supplemental hearing was scheduled for January 13, 2005, and postponed until March 3, 2005, due to a scheduling problem. R. at 27, 110, 116. The ALJ reached a decision on June 13, 2005, denying supplemental security income under Title XVI of the Act. R. at 35. On February 17, 2006, the Appeals Council denied Allen's request for review of the ALJ's decision. R. at 12. The Appeals Council's denial for review effectively transformed the ALJ's decision into the final decision of the Commissioner of. *Id.*

### A. PHYSICAL LIMITATIONS

In August of 2001, one month after the alleged disability onset date, James Bertsch, D.O. ("Dr. Bertsch"), Allen's treating physician, noted no restrictions or limitations on Allen's work activities. R. at 347.

In December of 2001, Allen was evaluated based on his complaints of bad ankles, arthritis, and visual difficulties. R. at 319. Phillip S. Budzenski, M.D. ("Dr. Budzenski"), a consultative examiner, found no clinical explanation for the foot pain. R. at 323. Dr. Budzenski stated that the foot pain is most likely related to peripheral edema secondary to Allen's high caffeine and sodium intake. *Id.* Allen was not taking medication for pain in either August or December of 2001. Dr. Budzenski concluded that Allen could perform light work[1] not requiring a degree of visual acuity,

---

[1]Light work requires (1) lifting or carrying ten pounds frequently; (2) lifting twenty pounds occasionally; (3) standing or walking, off and on, for six hours during an eight-hour workday; (4) intermittent sitting; and (5) using hands and arms for grasping, holding and turning objects. R. at 25, n.6.

driving, climbing, crawling or unprotected heights, as long as he was sitting for the most part and standing thirty minutes each hour for a total of four hours. R. at 323-24.

In July of 2002, Dr. John DePersio, M.D. ("Dr. DePersio"), found evidence of a degenerative spur formation in Allen's lumbar spine and right hip, but no acute abnormality. R. at 193. In December of 2003, Allen underwent a radionuclide bone scan that revealed an abnormality in the right femur consistent with a small bone infarct. R. at 532. X-rays taken in late August of 2004 revealed gout in the right ankle, a small degenerative spur at the insertion of the right Achilles tendon on the calcaneus, a mild bunion deformity of the first toe bilaterally and degenerative spurs of the left ankle. R. at 562.

Also in August of 2004, Allen complained of swelling in the hands, feet and ankles. R. at 568. He was evaluated by Rito Mandan, D.O., ("Dr. Mandan"), at the request of Dr. Bertsch. Dr. Mandan documented tenderness for the first time and reported a differential diagnosis including gouty arthritis and psoriatic arthritis. R. at 569. There is no documentation of abnormal gait in the medical record and Allen retains a full range of motion. R. at 276, 321-22.

Following an eye examination, Dr. Budzenski told Allen in December of 2001 that it would be inappropriate for him to drive any vehicle without visual correction. *Id.* Allen did not wear glasses at the time of Dr. Budzenski's examination. R. at 319-20. In January of 2002, Allen had cataracts bilaterally, some constriction of visual fields and loss of peripheral vision. R. at 320. In July of 2004, Allen had cataract extraction surgery on the right eye. R. at 214. A few weeks later, in early August of 2004, the same procedure was performed on Allen's left eye. *Id.* Following the cataract extraction surgeries, Allen's best corrected visual acuity was 20/24 right and 20/50 left. *Id.*

Allen also suffers from hypertension. In September of 2002, Allen complained of chest pain.

R. at 447. Cardiac examinations as well as chest x-rays, however, were normal. R. at 195-96, 198, 200, 202, 206, 208, 210, 214, 215-16, 233, 237, 239, 243, 274, 321. Allen has experienced occasions of elevated blood pressure which is currently controlled with medication. R. at 195, 206, 212, 215, 233, 274, 320. Dr. Mandan documented high cholesterol in August of 2004. R. at 569. At the time of the ALJ hearing, Allen was taking Lipitor for his cholesterol. R. at 150.

Allen is obese, standing at six feet one or two inches tall and weighs 315-349 pounds. R. at 412. In August of 2004, Allen went under a sleep study that showed severe obstructive sleep apnea as well as hypopneas, and arterial oxygen desaturation. R. at 572. The sleep apnea, hypopneas, and arterial oxygen desaturation are successfully abolished with BiPAP pressure and a medium nasal mask. R. at 556.

### B. PSYCHOLOGICAL LIMITATIONS

Allen is a special education graduate from Lincoln High School in Cambridge City, Indiana. R. at 128-29, 396. Allen attempted suicide approximately nineteen years ago. R. at 360. He has neither participated in inpatient or outpatient psychiatric care nor received or sought counseling services. *Id.* He has multiple IQ scores in the 70's range. R. at 137. In October of 2000, Allen's academic skills were evaluated employing a BF-164 psychological evaluation. R. at 135. Allen scored the following grade levels: 1.9 in reading,[2] 1.4 in spelling, and 2.1 in math. R. at 136.

Allen stated, while he was working as a dishwasher, he had difficulty remembering simple directions and simple steps. R. at 133. In October of 2000, Robert C. Kissel, Ph.D. ("Dr. Kissel")

---

[2]Dr. Jarmon testified during the March 3, 2005 hearing that a grade level of 1.9 in reading is consistent with a categorization as functionally illiterate. R. at 136.

administered a psychiatric evaluation. R. at 355. Dr. Kissel noted in the evaluation that Allen disclosed that he had suicidal thoughts approximately four months before the evaluation due to not being able to maintain a job. R. at 360. Dr. Kissel recommended, among other things, that a discussion should be held with Allen regarding the potential benefit of involvement in outpatient mental health services. R. at 362. Also included in this psychological evaluation was the administration of the Wechsler Memory Scale. R. at 355. Dr. Kissel noted that Allen seemed to struggle with short-term auditory memory skills. R. at 357. Allen's overall memory quotient was a 59. R. at 358. Dr. Kissel found Allen was strongest with more practical training approaches rather than classroom forms of instruction. Based on these results, Dr. Kissel suggests Allen "will need work that is straightfoward, performance-based, and actively involves him in the learning process. Training probably will proceed more effectively if it is on the job, specific to identified work responsibilities, and emphasizes learning by doing." R. at 358.

### C. ALLEN'S DAILY ACTIVITIES

Allen reported in his disability claim form the following activities of daily living: maintenance of personal hygiene and grooming, caring for his ill father, running errands for his mother, cleaning, cooking meals, doing laundry, fishing, performing general yard work, driving, watching television, shopping, bowling, playing basketball, and visiting friends. R. at 174-75. In addition, Allen reported he went on vacation to Florida. *Id.*

## D.  EXPERT TESTIMONY AT THE HEARING

Dr. Paul A. Boyce ("Dr. Boyce"), a medical expert, testified at both the October 9, 2003, and March 3, 2005, hearings that Allen has several health problems, but that after reviewing Allen's medical record, none of his impairments meet or equal a Listing of Impairments (the "Listings"). R. at 142-43, 151.  Specifically, at the hearing on October 9, 2003, Dr. Boyce stated Allen's impairments are as follows: (1) hypertension; (2) degnerative arthritis; (3) gastro esophageal reflux disease; (4) carpal tunnel syndrome; (5) amblyopia[3] of the left eye; and (6) past history of bladder cell carcinoma.  R. at 92-93.  Dr. Boyce also found upon review of Allen's medical record that Allen suffers from the symptoms of chest pain and headaches.  *Id.*  Dr. Boyce's testimony on March 3, 2003 expanded upon his initial findings.  Dr. Boyce stated that Allen has obstructive sleep apnea[4] and levels of desaturation[5] of oxygen.  R. at 143.  Dr. Boyce stated he did not see any evidence of significant asthma and that the use of an inhaler does not solely point to an asthmatic issue because inhalers are prescribed for many ailments.  R. at 144.  Dr. Boyce also testified as to Allen's vision problems.  Dr. Boyce found that although the cataract surgery improved Allen's visual acuity, Allen still has a diagnosis of amblyopia in the left eye.

Dr. Boyce also reviewed Allen's record with regard to his diagnosis of arthritis.  R. at 144-149.  Dr. Boyce found the lumbar spinal films showed mild degenerative changes of the lumbar spine and the right hip, but testified that the changes were not severe.  R. at 145.  He also testified

---

[3]Dr. Boyce characterized amblyopia as a "lazy eye."  R. at 93.

[4]Allen went under a sleep apnea study on August 27, 2004.  R. at 143.

[5]Desaturation is defined as "the percentage of total binding sites remaining unfilled." STEDMAN'S MED. DICTIONARY 466 (26th ed. 1995) ("STEDMAN'S").

to a benign tumor within the right femur after his review of the series of x-rays beginning in 2003. R. at 146. Dr. Boyce stated there was no evidence of joint arthritis within the right ankle joint, but that he did find evidence of degenerative spurring along the Achilles tendon and a mild bunion deformity of the first metacarpal phalangeal joint. *Id.* Dr. Boyce went on to testify that he found no true acute gouty attack documented in the record, but that there is evidence of tofus[6] on the x-rays. R. at 148. Dr. Boyce also testified to evidence of psoriatic arthritis.[7]

Finally, Dr. Boyce reviewed Allen's current medications. R. at 150. Dr. Boyce stated that the Protonix is for Allen's stomach, and that his blood pressure is treated with two different medications. *Id.* He further stated that Allen takes medicine to suppress uric acid production to treat gout. *Id.* As for Allen's psoriasis, Dr. Boyce stated he is prescribed an ointment, Denzinide, and Lortab for the psoriasis and pain, respectively. R. at 151.

Medical expert, Dr. David G. Jarmon, testified on March 3, 2005, that Allen has low borderline intellectual functioning and significantly deficient academic skills.[8] R. at 138. Dr. Jarmon also testified that a Wechsler Memory Scale memory quotient of fifty-nine is below the level which would be expected on the basis of Allen's IQ scores, but it is consistent with his academic functioning. R. at 139. Dr. Jarmon's opinion was that Allen was capable of simple, repetitive and unskilled work and that Allen did not meet any of the Listings. R. at 136.

---

[6]Dr. Boyce reported that people who have gouty attacks may ultimately have tofacious deposits. R. at 148.

[7]Psoriatic arthritis is an inflammatory condition that is generally treated with anti-inflammatories and sometimes immunosuppressive agents. R. at 149.

[8]Low borderline intellectual functioning combined with deficient academic skills is not synonymous with a categorization of learning disabled. R. at 138.

Constance Brown ("Brown"), a vocational expert, testified at the March 3, 2005, hearing that Allen, while working as a upholstery helper, performed semi-skilled work. R. at 141. This finding of past semi-skilled work experience is not inconsistent with Dr. Jarmon's opinion that Allen is capable only of unskilled work because during his employment as a upholstery helper, Allen was under constant supervision. *Id.* Brown identified a significant number of jobs in the State of Indiana which Allen can perform consistent with his residual functional capacity ("RFC") and vocational factors including janitor and cleaner (5,000 jobs), maid and houseman (4,500 jobs), and assembler (4,900 jobs). R. at 33-34, 160.

## II. DISABILITY AND STANDARD OF REVIEW

A claimant must have a "disability" under 42 U.S.C. § 423 to be eligible for DIB. "Disability means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A five-step sequential evaluation process necessary to the ALJ's determination of whether a claimant is disabled is set forth in 20 C.F.R. § 404.1520(a)(4).

1. If the claimant is employed in substantial gainful activity, the claimant is not disabled.

2. If the claimant does not have a severe medically determinable physical or mental impairment or combination of impairments that meets the duration requirement, the claimant is not disabled.

3. If the claimant has an impairment that meets or is equal to an impairment listed in the appendix to this section and satisfies the duration requirement, the claimant is disabled.

>   4.  If the claimant can still perform the claimant's past relevant work given the claimant's residual functional capacity, the claimant is not disabled.
>
>   5.  If the claimant can perform other work given the claimant's residual functional capacity, age, education, and experience, the claimant is not disabled.

When applying this evaluation process, the burden of proof rests with the claimant for steps one through four. *See Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If the claimant meets that burden, the burden then shifts to the Commissioner to prove that the claimant can perform other work given the claimant's residential functional capacity, age, education, and experiences. *See Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

The Act provides for judicial review of the Commissioner's denial of benefits. *See* 42 U.S.C. § 405(g). First, the Appeals Council must deny review of the ALJ's findings. The consequence of this denial is that the findings of the ALJ become that of the Commissioner. *See, e.g.*, *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). This Court will sustain the findings of the ALJ and Commissioner if such findings are supported by substantial evidence. 42 U.S.C. § 405(g); *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1999). In reviewing the ALJ and Commissioner's findings, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ and Commissioner. *See id.* While a scintilla of evidence is insufficient to support the ALJ's findings, the only evidence required is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

### III. DISCUSSION

### A. THE ALJ'S FINDINGS

The ALJ in this case properly followed the five-step inquiry. At step one, the ALJ found that Allen had not engaged in substantial gainful activity since the alleged onset of the disability. R. at 18. At step two, the claimant must prove he has a "severe" impairment, i.e., one that significantly limits his physical or mental ability to do basic work activities. 20 CRF §§ 404.1520(a)(c), 404.1521(a),(b). The ALJ's step two evaluation contains consideration of the medical evidence favorable to Allen, portions of the medical experts' testimony, Allen's own testimony, and Allen's entire medical record, including the observations of his treating physician. R. at 28-34. The ALJ analyzed Allen's physical ability to do basic work activities separately from Allen's mental ability to do basic work activities. The ALJ stated, "[t]he record does not contain evidence of any medically determinable impairment that reasonably could have accounted for a significant drop in the claimant's mental ability, such as a head injury or significant illness that impacted on the cognitive function." R. at 32. Physically, the ALJ found that in "[c]onsidering the combined effect of the claimant's degenerative joint disease, degenerative disc disease, gout, obstructive sleep apnea, hypertension and obesity, . . . [Allen] is limited to the range of light exertional work detailed above." R. at 31.

At step three, the ALJ determined none of Allen's impairments, even when considered in combination, meet or equal in severity all of the criteria of any impairment contained in the Listings. R. at 19. Specifically, the ALJ found Allen's borderline intellectual functioning does not meet or equal Listing 12.02 or any other 12.00 Listing. R. at 29. The ALJ also found "no evidence of the

cor pulmonale or severity of organic mental disorder required by Listing 3.10. R. at 28. Physically, the ALJ concluded:

> [There is] no evidence that the claimant is unable to ambulate effectively, or that he is unable to perform fine and gross movements effectively, as required by Listing 1.02. In addition, there is no evidence of the nerve root or spinal cord compromise required by Listing 1.04. . . . Moreover, there is no evidence of the chronic heart failure, ischemic heart disease or end organ damage required by Listing 4.03. Additionally, while there is no longer a specific listing for obesity, consideration has been given the claimant's obesity in evaluating all of his impairments.

*Id.*

The ALJ, in consideration of the testimony and opinions of Dr. Budzenski, Dr. Boyce and Dr. Jarmon, determined that Allen retains the RFC to perform light exertional work with the following limitations and restrictions: no climbing of ladders, ropes or scaffolds; no work in close proximity to dangerous machinery; avoid cold; the work must be simple and repetitive; and no reading or writing. R. at 29.

Based on that RFC, the ALJ concluded Allen is unable to perform his past relevant work as an upholstery helper and therefore satisfied the fourth step. R. at 33. However, at the fifth and final step, the ALJ found that Allen is able to perform a significant range of light work. *Id*. The ALJ acknowledged that Allen does not retain the RFC for a full range of light work and therefore considered vocational evidence before arriving at his conclusion for the fifth and final step. *Id.* Ultimately, the ALJ concluded that Allen is not disabled within any meaning of the Act. R. at 34.

Allen asserts that the ALJ's decision, and thus the decision of the Commissioner, is not supported by substantial evidence. Specifically, Allen presents the following issues: (1) whether the ALJ wrongfully ignored critical testimonial and medical evidence in making a decision; (2) whether the decision failed to properly evaluate Allen's mental impairment; (3) whether the denial fails to

11

articulate the function-by-function assessment of Allen's RFC and logically bridge the evidence to the denial's conclusion; and (4) whether the decision fails to properly account for the impact Allen's severe morbid obesity has on the rest of his functioning.

### B. THE ALJ'S EVALUATION OF ALLEN'S INTELLECTUAL FUNCTIONING

The ALJ's finding that Allen's borderline intellectual functioning does not meet or equal in severity any 12.00 Listing, including Listing 12.02 or Listing 3.10, is supported by substantial evidence. R. at 28-29. The ALJ specified the relevant Listings and explained in his step three analysis what evidence he took into consideration in making his determination that Allen's borderline intellectual functioning did not meet or equal in severity all of the criteria of either Listing 3.10 or any 12.00 Listing. *Id.* The ALJ considered the important evidence, and the opinion enables the Court to trace the path of the ALJ's reasoning. *Greenwood v. Barnhart*, 433 F. Supp. 2d 915, 925 (N.D. Ill. 2006) (citing *Rice v. Barnhart*, 384 F. 3d 363, 371 (7th Cir. 2004)). In addition, "[b]ecause it is proper to read the ALJ's decision as a whole, and because it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five, . . . we consider the ALJ's treatment of the record evidence in support of both his conclusions at steps three and five." *Rice*, 384 F.3d at 370 n.5 (comparing *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir. 1985)). The ALJ expanded upon his already articulated assessment of the evidence of intellectual function in his step five analysis to assure this Court that he considered the important evidence when he concluded that Allen's borderline intellectual functioning did not meet or equal in severity the relevant listings. R. at 32-33.

### C.  THE ALJ'S FINDING REGARDING ALLEN'S RFC

The ALJ's finding that Allen retains the RFC to perform light exertional work with the limitations described above is supported by substantial evidence.  In making his determination, the ALJ relied on statements and reports from Allen, and others, including all treating and examining physicians and psychologists, regarding Allen's medical history, diagnoses, treatment and efforts to work.  R. at 31, 33.  This approach is consistent with 20 CFR § 404.1529(c)(3) and Social Security Ruling 96-7p.  After reviewing the evidence offered, the ALJ determined Allen's RFC which was consistent with the treating physician's opinion regarding Allen's functioning.  R. at 26.  In addition, under the regulations, state agency medical consultants and other program physicians are "highly qualified physicians . . . who are also experts in Social Security disability evaluation."  20 C.F.R. §404.1527(f)(2).  Thus, the opinions of Dr. Budzenski, Dr. Boyce, and Dr. Jarmon provide substantial evidence in support of the ALJ decision.  The ALJ's RFC determination is entirely consistent with the findings of the various specialists who examined Allen in treatment and consultation.

In arriving at his conclusion regarding Allen's RFC, the ALJ considered Allen's physical abilities, including sitting, standing, walking, lifting, carrying, and postural functions.  R. at .29.  The ALJ specifically noted the pain Allen reported experiencing while sitting, standing, and walking, and also noted that "objective signs of range of motion and gait have not been shown to be abnormal as one would reasonably expect in an individual who has attempted to function with such symptomology."  R at 30.  After reviewing the evidence in its entirety, however, the ALJ found no support in the record for limitations on standing imposed by Dr. Budzenski.  R. at 32.

### D.  THE ALJ'S CONSIDERATION OF ALLEN'S OBESITY

The ALJ, specifically discusses, in a separate paragraph, that Allen is obese. R. at 31. The ALJ refers to the medical record over forty times indicating his acknowledgment of this long-term condition, including the fact that Allen was obese before the alleged onset date of disability. R. at 31, 298. The ALJ also notes that although obesity is no longer a recognized Listing-level impairment, he took the obesity into consideration when assessing Allen's overall functional capacity. R. at 31. The Court finds no error in the ALJ's assessment of Allen's obesity alone or in conjunction with Allen's other limitations.

### E.  THE ALJ'S CONSIDERATION OF EVIDENCE

The ALJ's finding that Allen has the RFC to perform a significant range of light work is supported by testimonial evidence. The ALJ asked Brown whether jobs exist in the Indiana economy for an individual of Allen's age, education, past relevant work experience, and the exertional and non-exertional limitations noted in the ALJ's RFC assessment. R. at 160. Brown reported that this hypothetical person would be capable of making a vocational adjustment to other work, specifically the following light, unskilled jobs in Indiana: janitor and cleaner (5,000 jobs), maid and houseman (4,500 jobs), and assembler (4,900 jobs). *Id.* Because the ALJ's hypothetical question was complete with all of Allen's exertional limitations, Brown's response provides a reliable assessment of Allen's RFC and the jobs that would be appropriate for him. *See Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540-41 (7th Cir. 1992). Allen specifically challenges the ALJ's consideration of Brown's response to an inquiry of vacation time, sick time, and personal days in combination with

Allen's memory quotient as well as the ALJ's consideration of evidence related to his sleep apneas and hypopneas.

In treating the ALJ's decision as a whole, this Court is able to trace the ALJ's path of reasoning. *Greenwood*, 433 F. Supp. 2d at 925. Dr. Boyce testified that in his opinion there was evidence of psoriatic arthritis and that with an adjustment in medication attacks would not be likely to inhibit Allen from functioning. R. at 156. The ALJ reviewed the medical record with regard to Allen's sleep apneas and hypopneas and found that, based on the evidence in the record, the "condition is well controlled with medication consistent with the authority of Social Security Ruling 96-3p." R. at 31. The ALJ did incorrectly state in his decision the treatment to be continuous positive airway pressure ("CPAP") when the treatment is actually BiPAP that is successful in abolishing Allen's apneas, hypopneas, and arterial oxygen desaturation. However, the ALJ correctly references the portion of the medical record that clearly states that although CPAP does not abolish the sleep apnea, the BiPAP does. *Id.* The ALJ sufficiently articulated his assessment of this evidence in his step five analysis to assure this Court that he considered the important testimonial evidence of both the vocational expert as well as the medical experts when he concluded that Allen is not disabled and can perform other work given his RFC, age, education, and experience. The Court finds that the record contains "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz*, 55 F.3d at 305 (quoting *Richardson*, 402 U.S. at 401).

## IV. **CONCLUSION**

For the foregoing reasons, the final decision of the Commissioner of Social Security in this case is **AFFIRMED**.  Final judgment shall be entered accordingly.

IT IS SO ORDERED this 2nd day of November, 2007.

_____
LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronically distributed to:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov